## WILLIAM HENRY BECK v. STATE

No. 34,668.   June 27, 1962

*Brown & Shuman,* by *Clifford W. Brown,* Lubbock, for appellant.

*Alton R. Griffin,* District Attorney, Lubbock, and *Leon Douglas,* State's Attorney, Austinfi for the state.

DICE, Judge.

Pandering is the offense; the punishment, enhanced by reason of two prior convictions for felonies less than capital, life imprisonment.

The conviction is under that portion of the pandering statute, Art. 519, V.A.P.C., which reads:

"Any person who shall procure or attempt to procure or be concerned in procuring with or without her consent a female for prostitution * * * shall be confined in the penitentiary for any term of years not less than two."

Count #1 of the indictment under which appellant was convicted alleged that on or about the 6th day of February, 1961, he did unlawfully "by means of offering her money, attempt to procure, without her consent, Opal Wilhite, a female, for prostitution."

By motion to quash, which was by the court overruled, appellant challenged the sufficiency of the indictment to charge an offense. In the motion, he urged that the allegation in the indictment that he did attempt to procure the female for prostitution by "means of offering her money" was insufficient because it did not allege what the offer of money was for or the manner or the means by which the offer was made and was nothing more than a legal conclusion of the pleader.

In support of his contention, appellant relies upon Monroe v. State, 143 Texas Cr. Rep. 120, 157 S.W. 2d 648, where it was held that the allegation in an indictment that the accused did unlawfully procure the female "by means of threats, force and fraud" was insufficient to charge an offense of pandering, under the statute.

In the case cited, the court stated the rule that in prosecutions under the phase of the pandering statute here presented, an indictment which merely follows the language of the statute is insufficient and in order to be sufficient to meet the requirements of definiteness the indictment must aver not only the acts or omissions on the part of the accused showing that he did in fact procure the female to become an inmate of a house of prostitution, but how the same was accomplished.

The indictment in the instant case clearly alleges that appellant attempted to procure the female by "means of offering her money". Such allegation was sufficiently definite as to how he attempted to procure her. We find the allegations of the indictment sufficient to charge an offense under the statute.

The state's testimony shows that the prosecuting witness,

Mrs. Opal Wilhite, lived with her husband and three children in the city of Lubbock. The eldest daughter, Glenda, seventeen years of age, had been having difficulties with her father and on two occasions had run away from home.

On Saturday, February 4, 1961, appellant called Glenda at her home on the telephone and solicited her assistance in recovering his automobile from a girl whom she knew. As a result of the conversation, Glenda went to a drugstore and met the appellant, whom she had never seen before. In their conversation, appellant asked Glenda to marry him, talked about prostitution, told her "you make good money at it" and that "he was a hustler of women." Glenda told appellant she would go to Oklahoma with him and agreed to meet him at the drugstore that night at 1:00 a.m. She then returned to her home and, later in the night after appellant failed to keep his appointment, went with a boy to Amarillo, where she secured work and stayed for some three weeks before returning home.

Shortly after midnight, appellant called the Wilhite home, asking for Glenda, and it was then discovered that she was missing. During the night and following day, Sunday, he continued to call and talked to Mrs. Wilhite about her daughter, who was still missing. In the conversations, appellant told Mrs. Wilhite that he loved Glenda and wanted to marry her. Appellant also stated that he was a private detective and would do all he could to find her.

Mrs. Wilhite testified that on one occasion appellant asked her to have a coke with him and that she began to act "fresh" with him because she thought he knew where the daughter was and she wanted to get him to tell her. She stated that in a telephone conversation with appellant on Monday morning appellant asked her if she would like to work "out here" and start selling herself and suggested that she divorce her husband and prostitute in her own house, saying: "We could make a lot of money." She stated that in a conversation with appellant on Monday morning appellant invited her out to dinner and she refused; that when he called back later she suggested that he come to her house; that appellant came around 1:45 p.m.; that when he arrived she told appellant she was about out of "her mind" over the disappearance of her daughter and appellant handed her two capsules, told her to take them, and she then took one of the capsules and kept the other.

The testimony reflects that prior to appellant's coming to the

home, Mrs. Wilhite had notified the police and that after he left the home he was taken into custody upon a charge of possession of barbiturates and carried to the police station.

Later on Monday evening, appellant called Mrs. Wilhite, inferred that she had turned him in, and asked her to start working as a prostitute and make money to repay him for the money he had been out in making bail.

The following Tuesday morning, appellant again called Mrs. Wilhite and again talked to her about her prostituting to make money and pay him back for the money he had been out in making bail. In the conversation, Mrs. Wilhite informed appellant that she did not want to have anything more to do with him and for him not to call her anymore.

Officer Bill Bessent testified that he was in the Wilhite home on Tuesday and listened over an extension telephone to the conversation between the appellant and Mrs. Wilhite. He stated that in the conversation appellant asked Mrs. Wilhite for $150 to repay him for what he had spent for a lawyer and bondsman the previous day, and, after she stated she did not have the money, appellant stated to her: "Well, will you come on out to the house and go to work * * * ?" and when she asked what kind of work appellant stated: "You can come out there and sell * * * and get my money back"; "You can make a lot of money at it"; "We can * * * make a lot of money * * * ."

Officer Bessent further testified that after listening to the conversation he went to the county attorney's office, obtained a warrant for appellant's arrest on a peace bond hearing, and then proceeded with other officers outside the city limits to Carlisle, where appellant was placed under arrest.

Proof was made by the state of the two prior convictions by the introduction in evidence of the prison records and comparison of fingerprints, in the manner which has been approved by this court.

Appellant did not testify or offer any evidence in his behalf.

Appellant questions the sufficiency of the evidence to sustain the conviction on various grounds.

It is first contended that the proof fails to show that appel-

lant offered the prosecutrix any money to engage in prostitution. Appellant relies upon the fact that both the prosecuting witness and Officer Bessent testified on their cross-examination that they could not say that appellant in so many words stated that he was offering her money. While they did so testify, both maintained that appellant did offer her money. Their testimony, which is undisputed, shows that appellant in his conversation with Mrs. Wilhite in which he proposed that she engage in prostitution stated to her "We can make a lot of money," and "You can make a lot of money at it." We construe such statements, under the surrounding facts and circumstances, as an offer of money.

The term "offer" has been defined as meaning "a proposal to do a thing" * * * to "make a proposal to." See 67 Corpus Juris Secundum, page 89, and cases annotated.

We find the evidence sufficient to prove that appellant did offer the prosecuting witness money to engage in prostitution.

It is next contended that the evidence fails to show that the solicitation was made without the consent of the prosecuting witness, as charged in the indictment.

Under the statute, the attempt to procure may be *with or without* the consent of the female, and it is immaterial whether or not she consented thereto. Stevens v. State, 68 Texas Cr. Rep. 282, 150 S.W. 944, and Currington v. State, 72 Texas Cr. Rep. 143, 161 S.W. 478. The allegation in the indictment of want of consent may be treated as surplusage. We observe, however, that the prosecuting witness testified throughout the trial that her reason for dealing with appellant as she did was to try to find her missing daughter. Her testimony does not show consent to appellant's offer.

Appellant next insists that the court erred in admitting evidence of certain extraneous offenses concerning appellant which were not admissible to serve any pertinent issue in the case.

By such contention, appellant complains of the evidence admitted which showed that he had attempted to procure the daughter, Glenda Wilhite, to engage in prostitution; that he was arrested on a charge of possession of barbiturates and was later arrested under a warrant in a peace bond proceeding.

Under the record, we find no error in the admission of such evidence.

The general rule which prohibits evidence of extraneous offenses has certain well-recognized exceptions. Under the exceptions to the rule, evidence of extraneous offenses or transactions is admissible where it shows system, intent, knowledge, identity, or is part of the res gestae. 23 Texas Jur. 2d, Secs. 194-200, pages 294-310; Cage v. State, 167 Texas Cr. Rep. 355, 320 S.W. 2d 364.

The evidence of appellant's attempt to procure the prosecuting witness's daughter was clearly admissible as a part of the res gestae of the transaction and to show appellant's scheme and design in the transaction with her mother, the prosecuting witness.

Appellant's arrest for possession of barbiturates was clearly a part of the res gestae of the transaction with the prosecuting witness, and admissible as such.

Reversible error may not be predicated upon admission of the testimony showing appellant's arrest upon a warrant issued in a peace bond proceeding over the objection that it was an extraneous matter, in view of the admission of similar testimony in the record without such an objection.

We overrule appellant's remaining contention that the court erred in failing to charge the jury on the law of entrapment. "Entrapment", in its legal sense, carries with it the presumption that the officer or agent manufactures the offense and incites the accused to commit it, for the purpose of prosecution. Peery v. State, 138 Texas Cr. Rep. 155, 134 S.W. 2d 283. Entrapment is also defined as "the inducement of one to commit a crime not contemplated by him for the mere purpose of instituting criminal prosecution against him." See: Cooper v. State, 162 Texas Cr. Rep. 624, 288 S.W. 2d 762, and cases there cited.

There is no evidence in the instant case that any officer, either acting by himself or through the prosecuting witness, induced appellant to commit the offense for the purpose of prosecuting him. No issue of entrapment was raised by the evidence.

The judgment is affirmed.

Opinion approved by the Court.